IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

ALMA LANE MORRIS, Executrix )
of the Estate of RAYMOND ALFRED )
MORRIS, )
                      )
        Plaintiff/Appellant, ) Trial Court No. T-10156
                      )
                      )
VS. ) Appeal No. 02A01-9610-CH-00236
                      )
VOIL MORRIS, )
                      )
        Defendant/Appellee. )

FILED

November 12, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF GIBSON COUNTY
AT TRENTON, TENNESSEE
THE HONORABLE GEORGE R. ELLIS, CHANCELLOR

**MITCHELL G. TOLLISON**
**HAWKS & TOLLISON**
Humboldt, Tennessee
Attorney for Appellant

**L. L. HARRELL, JR.**
**HARRELL, HARRELL & AGEE**
Trenton, Tennessee
Attorney for Appellee

**REVERSED AND REMANDED**

                                        **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Alma Lane Morris ("Executrix"), substitute plaintiff and Executrix of the estate of

Raymond Alfred Morris ("Decedent"), appeals the trial court's order entering a judgment in favor of Voil Morris ("Defendant"). We reverse the trial court's judgment because we hold that the parties' pleadings conclusively established that funds in Defendant's possession were held in trust for Decedent and that Decedent was entitled to the return of approximately $50,000 in trust funds.

**Facts**

On June 25, 1992, Decedent filed a complaint seeking the return of trust funds in the possession of Defendant. Thereafter, on July 23, 1992, Defendant filed an answer wherein Defendant admitted that he was holding the funds in trust for Decedent and, further, that Decedent was entitled to approximately $50,000 of the trust. Defendant contended that $3,500 of the funds belonged to him. On page 2, paragraph 8, of Defendant's answer, he stated: "The defendant admits that there was an agreement that he was only holding the money, and that he has paid over money to him (Decedent) each and every time that he has asked for it." Additionally, on page 9, paragraph 11, Defendant stated: ". . . but no records were kept, since at all times it was understood that the defendant was holding the money in trust so that it would be kept free and clear of creditors and any wife that he might acquire." Finally, on page 3, paragraph 11, of Defendant's answer, he stated: "The defendant for answer to Paragraph 11 alleges that the plaintiff is entitled to approximately $50,000.00, because $3,500.00 that is in the present certificate of deposit belongs to the defendant, and was added to that in order to get a more advantageous rate of interest."

Although Decedent filed this lawsuit, he died during the pendency of these proceedings, and his wife, Executrix, was substituted as plaintiff in this action. Decedent did not testify at trial; however, on January 4, 1994, Decedent gave his deposition which was introduced at trial without objection.

Decedent and Defendant are brothers. Decedent testified in his deposition that he had saved $82,000 from working at a mop mill. Originally, Decedent placed the money in a savings account solely in his name. Thereafter, Decedent changed the savings account to be held jointly by Defendant and himself. Subsequently, Decedent amended the

2

account so as to be held solely in the name of the Defendant within a certificate of deposit ("CD"). Decedent testified that his reason for switching the savings account was because he was fearful that his previous wife and her brothers would defraud him of his money. Eighty thousand dollars ($80,000) was placed in the CD in Defendant's name with the other $2,000 being split between Decedent and Defendant, each receiving $1,000. At the time of trial, approximately $51,000 remained in the CD.

At trial, the evidence focused on the intent of Decedent concerning the money entrusted to Defendant. According to Decedent's deposition, Decedent originally intended for the Defendant to receive the money that was entrusted to him. Decedent stated that he thought Defendant would outlive him and receive the money. Along these lines, Decedent and Defendant's niece, Nana Laverne Duncan, testified that she spoke with Decedent on three separate occasions within the last six months of Decedent's life concerning the lawsuit and the money. Duncan stated that on all three occasions the Decedent relayed to her that he wanted his money to stay just like it was because "if anything happens, Voil will take care of me." However, Decedent testified that on two occasions he asked Defendant for the return of his money from the account before he filed this lawsuit. Defendant never complied with Decedent's request on either occasion. Decedent's wife and Executrix testified that, at one point, Defendant did return $22,000 of the money in order for Decedent to purchase a home. Additionally, Decedent stated that when he got married, he believed Defendant would divide the money between Defendant and himself.

Based on the foregoing evidence, at the end of the Executrix's proof, the trial court ruled in favor of Defendant as to the proper disposition of the trust funds. Defendant's counterclaims were dismissed without prejudice. Executrix has appealed, contending that the trial court erred in finding for Defendant.

**Law and Discussion**

This case was tried by the trial court without a jury, and at the conclusion of Executrix's proof, the court, upon Defendant's request, granted a motion for directed verdict. We feel compelled to digress for a moment to comment on the procedure utilized

3

in this case. Motions and orders for directed verdicts are pursuant to Tenn. R. Civ. P. 50 and are appropriate only in jury trials. City of Columbia v. C.F.W. Construction Co., 557 S.W.2d 734, 740 (Tenn. 1977); Scott v. Pulley, 705 S.W.2d 666, 672 (Tenn. Ct. App. 1985); Roberts v. Robertson County Bd. of Educ., 692 S.W.2d 863, 874 (Tenn. Ct. App. 1985). They have no place in nonjury trials. Id. If a party desires to challenge the sufficiency of the plaintiff's proof in a nonjury trial, it must file a motion for involuntary dismissal at the close of plaintiff's proof pursuant to Tenn. R. Civ. P. 41.02(2).

The respective standards of review of the trial court's disposition of these motions is markedly different. In the case of a motion for directed verdict, the trial court must take the strongest legitimate view of the evidence against the directed verdict and must deny the motion in any case where reasonable persons would not reach the same conclusions. Goode v. Tamko Asphalt Prods., 783 S.W.2d 184, 187 (Tenn. 1989); Maddux v. Cargill, Inc., 777 S.W.2d 687, 691 (Tenn. Ct. App. 1989). However, in the case of a motion for involuntary dismissal pursuant to Tenn. R. Civ. P. 41.02(2), the trial court must impartially weigh and evaluate the evidence as it would after the presentation of all the evidence and must deny the motion if the plaintiff has made out a prima facie case. City of Columbia v. C.F.W. Constr. Co., 557 S.W.2d at 740.

The manner in which the trial court reviews the evidence varies depending on the type of motion that has been filed. Motions for directed verdict require more certainty in the proof than do motions for involuntary dismissal pursuant to Tenn. R. Civ. P. 41.02(2).

This case was a nonjury trial wherein Defendant moved the trial court to direct a verdict in its favor at the close of Executrix's proof. Procedurally, this was an inappropriate motion. The appropriate motion was one pursuant to Tenn. R. Civ. P. 41.02(2), a motion for involuntary dismissal. Nevertheless, whether Defendant moved the trial court for a directed verdict or an involuntary dismissal in this case is of no consequence. Regardless of which standard applies, we conclude that the trial court erred in dismissing the Executrix's action because the parties' pleadings conclusively establish that Defendant was holding the funds in trust for Decedent and that Decedent was entitled to approximately $50,000 in trust funds.

4

Pleadings prepared and filed by counsel representing a party are prima facie regarded as being authorized by the party. Pankow v. Mitchell, 737 S.W.2d 293, 296 (Tenn. Ct. App. 1987); See also E. Cleary, McCormick's Handbook of the Law of Evidence § 265, at 783-84 (3d ed. 1984). Thus, factual statements contained in pleadings filed on behalf of a party may be considered as admissions. Id. Factual statements in pleadings are conclusive against the pleader in the proceedings in which they were filed until they have been amended or withdrawn. Pankow, 737 S.W.2d at 296 (quoting John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp., 642 S.W.2d 151, 152 (Tenn. Ct. App. 1982)). Hence, when the allegations in a complaint are admitted in the answer, the subject matter of the allegations is removed as an issue and no proof is necessary. Irvin v. City of Clarksville, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1988)(quoting Rast v. Terry, 532 S.W.2d 552, 554 (Tenn. 1976)); see also Wilson v. Maury County Board of Education, 302 S.W.2d 502, 507 (1957).

In the case at bar, Defendant filed an answer in which he admitted to holding funds entrusted to him by Decedent in trust. Further, Defendant admitted that Decedent was entitled to a return of approximately $50,000 from the trust funds. Defendant did not withdraw or amend his pleadings; hence, these admissions in the pleadings were conclusive. Based on the parties' pleadings, therefore, the issues of whether a trust was established and whether Executrix was entitled to approximately $50,000 from said trust were no longer issues in this matter.

As mentioned above, the evidence at trial focused on the intent of the Decedent concerning the funds in the CD. However, this emphasis was misplaced. As a matter of law, the parties' pleadings not only established the existence of a trust but also that Decedent was entitled to approximately $50,000 from such funds. Accordingly, Decedent's intent regarding disposition of the funds upon his death was irrelevant to any issues in this lawsuit, and the trial court erred when it dismissed this matter at trial by granting a directed verdict at the close of Executrix's proof.[1]

---

[1]The issues at trial may have been muddied by Decedent's death. Upon the death of Decedent, this lawsuit survived and continued in the name of Alma Lane Morris, the Executrix of Decedent's estate. T.C.A. § 20-5-102; Tenn. R. Civ. P. 25. Accordingly, the issues in this case should have been tried as if the Decedent were still alive. Leffew v. Mayes, 685 S.W.2d 288, 291-92 (Tenn. Ct. App. 1984)(where joint tenants differed on ownership of funds and, during their lifetime, brought suit to establish their respective interests therein,

5

We reverse the trial court's judgment and hold that, with the possible exception of Defendant's claim for $3,500 from trust funds, Executrix is entitled to the funds held in the CD. On remand, the trial court shall adjudicate Defendant's claim for $3,500 and award the remaining trust funds to Executrix.

## Conclusion

The trial court's judgment is reversed and this matter is remanded for further proceedings necessary and consistent with this opinion. Costs of this appeal are taxed to Defendant, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.

---

ownership of funds should have been determined as if both claimants were still living).